**Willie L. JOHNSON, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, Defendant.**

**Civ. A. No. 92–1136.**

United States District Court, District of Columbia.

Nov. 2, 1993.

Maxine Bethel Cade, Cade & Vaughn–Carrington, Washington, DC, for plaintiff.

Frank Charles Morris, Jr., Epstein, Becker & Green, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

In this action, brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, the plaintiff, Willie L. Johnson, alleges that his former employer, Digital Equipment Corporation ("Digital") fired him from his sales position because of his race. Mr. Johnson is a black male. He was hired by Digital as a Senior Sales Representative in 1986 to sell Digital computer systems. Johnson was initially hired to work on the "large systems sales team" but was soon moved to a sales team which catered to the National Air and Space Administration ("NASA"). After two years on the NASA account, Johnson was given a number of less established "developmental accounts". Digital terminated Mr. Johnson's employment on September 10, 1991. The Court has before it Digital's Motion for Summary Judgment and Motion to Strike Evidence.

In his complaint and opposition to Digital's motion for summary judgment, Mr. Johnson states that he was a capable salesman who performed well until taken off the NASA account. Mr. Johnson alleges that Digital gave white sales representatives accounts with greater promise and thus provided white employees with more opportunities to meet their sales goals while he was relegated to non-performing "developmental" accounts. Thus, Mr. Johnson alleges that he was treat-

ed differently from similarly situated white employees and that Digital's proffered reason for terminating his employment—poor sales performance—was but a pretext for racial discrimination. Digital maintains that Mr. Johnson was hired as a salesman and despite numerous attempts to improve his sales skills through corrective action plans and other problem solving programs used by Digital to assist poorly performing employees, his sales skills remained inadequate to meet Digital's requirements. Digital insists that Mr. Johnson's performance on the NASA account was inadequate and that he was removed at the request of the customer. Digital also asserts that after he was taken off the NASA account, Mr. Johnson was given a number of developmental sales accounts where he had ample opportunity to succeed based on his sales ability. But despite having one of the lowest sales budgets of any sales representative Mr. Johnson failed to even come close to achieving his projected budget.

Because Mr. Johnson has brought forward no competent evidence to support his claim that Digital's legitimate non-discriminatory reason for firing him was pretextual, the Court will grant the motion for summary judgment.

*Summary Judgment Standards*

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.Proc. 56(c). Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment. The adverse party's opposition must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.Pro. 56(e).

The governing standards for the issuance of summary judgment were set by the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Court explicitly recognized that a full-blown trial is a drain on resources to be avoided if and when the non-moving party's position cannot be substantiated through affidavit or other competent means:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1.
>
> . . . .
>
> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2554. (citation omitted).

The plaintiff as the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) *(per curiam )* (citing *Celotex, supra ).* For this case to go to trial, Mr. Johnson must provide evidence of his prima facie case which would be admissible at trial. Furthermore, if Digital provides adequate evidence that Johnson was terminated because of poor performance, Johnson must then bring forward evidence of the pretextual nature of the legitimate non-discriminatory purpose posited by defendant Digital. Evidence of discrimination that is "merely colorable", or "not significantly probative" cannot prevent the issuance of summary judgment. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

*Evidence Put Forward by Plaintiff Johnson*

In a Title VII complaint the prima facie case is established when the plaintiff demonstrates that 1) He is a member of a protected class, 2) that he was terminated from his position, and 3) that he was replaced by a member of a non-protected class of equal or

lesser qualifications or that non-members of the protected class were treated more favorably. If the plaintiff succeeds in demonstrating these things, the burden shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the termination. Once the defendant has substantiated the legitimate non-discriminatory reason, the burden shifts back to the plaintiff to provide evidence that the legitimate non-discriminatory reason for the employment decision was merely a pretext—a mask—for illegal race-based discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Mr. Johnson claims that he was fired on the basis of his race. His allegations can be encapsulated in the four following statements:

1) Willie Johnson was an excellent salesman who performed well until he was replaced on a key account (the NASA account) by a white woman.

2) After being taken off the productive NASA account, Willie Johnson was given poorly performing "developmental" accounts where he was destined for failure.

3) White employees who were unable to meet their sales goals were not placed on verbal or written warnings as Willie Johnson was.

4) Digital has a policy of not promoting black employees in sales.

The documents and affidavits provided by Mr. Johnson either do not support these allegations or are immaterial to the issues at hand. The Court will outline the evidence before it on each of these points:

1. *Johnson's success as a sales representative on the NASA account.*

From April, 1987 through June, 1989 Mr. Johnson was assigned to Digital's NASA team as a Sales Representative for NASA headquarters. It is undisputed that during his two-year stint on the NASA account Mr. Johnson achieved his sales budget. Johnson provides documents which purport to show that he was instrumental in obtaining a $15 million multi-year sales contract with NASA to buy Digital products and that he received commendations from his supervisors for being part of a successful team. For example, a letter to Mr. Johnson dated June 14, 1989 on Digital letterhead from Johnson's District Sales Manager states "Your performance helped the District to catapult to a new height in leadership and performance."

Digital agrees that Mr. Johnson met his budget goals while working on the NASA account. But Digital does not believe that Johnson's performance was "outstanding" as he claims. Instead, Digital insists that Mr. Johnson's performance was unsatisfactory and that the reason he met his sales goals was because NASA is an "installed base account" where a substantial portion of the business done by sales representatives is generated from contracts that have already been won and are in place. Digital has provided declarations by supervisors that the reason Johnson was transferred to the NASA account in the first place was that he lacked the technical and strategic planning skills required at his original assignment with the "large systems sales team". Digital also points to the fact, undisputed by Mr. Johnson, that while on the NASA account, in April, 1989, Johnson was placed on a "corrective action plan" [1] by his supervisor. Digital provides evidence through declarations of Mr. Johnson's immediate and upper level supervisors (one of whom is Black) that while Johnson was able to meet his sales budget goals, his direct sales skills were weak, he had difficulty establishing and identifying relationships with key decision-makers in his accounts, his technical skills were unimpressive, and his overall sales strategy was ineffectual.

---

1. According to Betty Jean Fuller, a Human Resource's Partner at Digital, Digital's corrective action process encompasses the notion of progressive discipline. It is composed of increasingly serious phases: a "problem-solving" phase, where the employee is advised of performance problems but not given a formal warning; a verbal warning phase, and a written warning phase. At each phase, the employee's direct supervisor is responsible for articulating the particular problem that needs correcting and drawing up a corrective action plan designed to help the employee achieve the necessary remedial steps.

Moreover, Digital provides ample evidence that Mr. Johnson was removed from the NASA account, not because he was unable to fulfill his budget goals, but because key NASA customers had complained that Mr. Johnson added no value to the NASA team and did not understand NASA's technical needs. Through counsel during oral argument Mr. Johnson acknowledged that he was removed from the NASA account because of customer complaints.

Thus, while Mr. Johnson has provided evidence that he achieved his budget goals while on the installed base NASA account, Mr. Johnson has not presented any evidence that his performance on the account was adequate to satisfy the customer or that his removal from that account was due to something other than NASA's dissatisfaction. Johnson's admission that he was removed from the NASA account at the customer's request makes the fact that he successfully achieved his sales budget while on the NASA account irrelevant.

2. *After being removed from the NASA account Johnson was assigned to poorly performing "developmental accounts".*

Johnson asserts that after being taken off the NASA account, he was given poorly performing developmental accounts where failure was almost a certainty. Mr. Johnson does not deny that he failed to achieve his budget on these accounts, but submits evidence that his failure was due to market forces for which he should not have been held accountable: "There was minimal chance for Plaintiff to meet his goal of $1,118,000, not because of his sales ability but because solutions to certain exhibited opportunities were beyond his control." *Plaintiff's Opposition* at 8.

Johnson presents evidence that Digital price bids were being undercut by competitors. Mr. Johnson also provides evidence of his sales success on an account to which he had not been assigned: the Agency for International Development. For example, on

June 8, 1990 his supervisor sent out an inter-office memorandum congratulating Mr. Johnson for bringing in the "first order ever" from the Agency for International Development.

Mr. Johnson's arguments and the evidence submitted in this area are beside the point. Mr. Johnson presents evidence explaining why he did not achieve his budget on the developmental accounts. These explanations vary from competitive pressures to the fact that these accounts had histories of non-performance. But as Defendant Digital points out, "There is simply no evidence that plaintiff was at a competitive disadvantage because of his race." *Defendant's Reply* at 8.

3. *White employees who were unable to meet their sales goals were not given written and verbal warnings as Willie Johnson was.*

Plaintiff's main evidence on this point is that the woman who replaced him on the NASA account—Ms. Cheri Martell—did not achieve 100 percent of her sales budget on one occasion, and was not placed on a corrective action plan. The only evidence Mr. Johnson submits in support of this proposition is the declaration of Steven Mahoney, Digital's District Sales Manager. With regard to Ms. Martell, Steven Mahoney's declaration reads as follows:

Ms. Martell achieved 100% of her goals on numerous occasions; her record is excellent. In fiscal year 1989, she came close to but did not achieve 100% of her budget goals. An audit performed after the close of the fiscal year revealed an accounting error.... When the error was corrected, Ms. Martell was slightly under budget and did not make DEC 100.[2] This in no way reflected poorly on her abilities, however; in my opinion, Ms. Martell was one of the district's most consistent performers.

*Plaintiff's Opposition,* Exhibit 24 at 6–7. In the Court's view, this one statement is not adequate evidence of disparate treatment to

---

2. "DEC 100" is an award given to a sales representative who achieves 100 percent of his or her

sales budget.

withstand a motion for summary judgment. This statement simply does not support the proposition that Mr. Johnson was treated differently from similarly situated white employees. Mr. Johnson does not dispute that during the two years after being taken off the NASA account, he failed to achieve his budget goals by large margins. In one year he attained only 54.8 percent of his budget goal and in another he sold less than 50 percent of his goal. Moreover, there is undisputed evidence that Johnson's immediate supervisor had placed five white employees on corrective action plans during fiscal years 1990 and 1991.

#### 4. *Digital has a policy of not promoting black employees in sales.*

Mr. Johnson included in his declaration the statement that black sales representatives were not promoted or permitted to change departments. *See Declaration of Willie Johnson* at ¶ 7. In support of this declaration, Mr. Johnson has included in his opposition papers an unauthenticated four page document which purports to list Digital sales employees who have been terminated or transferred, broken down by race and sex. Taken at face value, the list suggests that of five black male sales employees besides Johnson who are no longer in sales, three black male sales employees were terminated, one black male received an internal transfer, and one received a transition package. Of eleven white male sales employees who are no longer in sales, four resigned, five received internal transfers, and one was relocated. Even if accurate [3], this list is not probative evidence of a policy of racial discrimination. The sample size is minuscule and the list is not accompanied by any statistical analysis that would permit a jury to find evidence of discrimination. *See Schmid v. Frosch,* 680 F.2d 248, 249–50 and n. 4 (D.C.Cir.1982) (noting that while small sample sizes must not be rejected altogether in employment discrimination cases, submissions based on statistics should contain useful analysis amounting to more than mere raw percentage comparisons); *Bush v. Common-*

*wealth Edison Co.,* 778 F.Supp. 1436, 1444 (N.D.Ill.1991) (*aff'd,* 990 F.2d 928 (7th Cir. 1993)) (holding that the fact that all nine employees discharged for disciplinary reasons were African–American did not create a genuine issue of fact absent other evidence of racial discrimination).

Moreover, in his deposition Mr. Johnson admitted that he had no personal knowledge of the circumstances of the terminations or transfers of the relevant employees. By contrast, Digital has submitted evidence justifying the termination of each employee relevant to this case.

#### Conclusion

This Court recognizes that it must approach summary judgment in a discrimination case with special caution. *See McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992) (general standard for summary judgment is applied with added rigor in employment discrimination cases). Discriminatory intent and proof of disparate treatment are notoriously difficult to establish so the court must be extra-careful to view all evidence in the light most favorable to Mr. Johnson. This said, despite extensive discovery in this case Plaintiff has brought forward no evidence of race discrimination. He cannot point to any statement by any employee of Digital suggesting discriminatory intent. The evidence of disparate treatment is equally scarce. A thorough examination of the affidavits, depositions, and documentary evidence makes it painfully clear that Mr. Johnson was hired to do a job for which he was ill-equipped.

Mr. Johnson does not dispute that he was taken off the NASA account at the client's request. He does not dispute that he failed by a large margin to achieve his sales goals for fiscal 1990 and 1991. He does not dispute that he was consistently given poor evaluations and was criticized repeatedly on his performance by supervisors. He does not dispute that he was placed on numerous corrective action programs in order to improve his performance. The memorandum

---

**3.** There are serious evidentiary problems with this document. The list is unauthenticated. The Court cannot discern the source of the exhibit

and whether it contains reliable or genuine information.

 

sent to Mr. Johnson by his supervisor Lynne Corddry on April 4, 1991 to advise him he was being placed on verbal warning is typical of the kind of evaluation that Mr. Johnson received during his time at Digital:

> *Technical Knowledge*—As a senior sales representative, you should be requesting and using less pre-sales support people. You continue to require a significant amount of technical resources in situations where at this point in your career should require much less. Willie, as stated in your Q1–Q3 performance document, you have a difficult time explaining Digital products or solutions.

> 4. I have one final concern around business judgment. This has been addressed in your recent Q1–Q3 performance appraisal. Willie, your continued lack of understanding around customer account goals and directions plagues you with one predicament after another. You committed to AID for a workstation pilot and did not follow through. Your lack of understanding around the customers [sic] requirements and our products caused customer dissatisfaction. Your inability to communicate the Department of Energy NPR solicitation to management caused a lack of credibility for the project and no pre-sales support. You have had many discussions with Digital GIA around the support and certification of AID orders. You continue to frustrate that organization with your lack of understanding of the process. It has been described to you on many occasions.

*Defendant's Motion for Summary Judgment*, Exhibit J of Corddry Declaration. Evaluations and corrective action plan documents similar to this one populate the record. Even the transcripts of meetings with his supervisors that Mr. Johnson made without their knowledge [4] do not reveal any evidence of discrimination. In spite of all this, Mr. Johnson maintains that his termination was somehow related to his race.

A review of the record and all inferences drawn from it make it clear that Mr. Johnson has put forward no evidence from which a reasonable juror could find that Digital's legitimate non-discriminatory reasons for terminating him were a pretext for racial discrimination.

Given the Court's determination that the evidence presented by Mr. Johnson, even if accepted is not adequate to withstand a motion for summary judgment, there is no need for the Court to address Digital's pending motion to strike evidence.

An appropriate order accompanies this opinion.

### ORDER

Now before the Court is Defendant Digital Equipment Corporations's Motion for Summary Judgment. Based on the papers, affidavits, exhibits submitted by the parties, oral argument, and for the reasons stated in the foregoing memorandum opinion, it is hereby **ORDERED** that the Motion for Summary Judgment by Defendant Digital Equipment Corporation be granted.

---

4. There are serious evidentiary and authenticity problems with these transcripts or "minutes" as Mr. Johnson calls them. Mr. Johnson does not recollect the name of the woman he hired to transcribe the tapes. Mr. Johnson testified in a deposition that when he received the transcripts back he did not check the transcripts against the tapes for accuracy. One transcript submitted by the plaintiff in his Motion in Opposition (Exhibit 20) contains many gaps and incomplete sentences.