Emanuel JOHNSON, Jr., Plaintiff,

v.

Charles C. MADDOX, Defendant.

Civil Action No. 00–2743(RMU).

United States District Court,
District of Columbia.

Nov. 12, 2002.

2

Emanuel Johnson, Jr., Woodbridge, VA, Pro Se Plaintiff.

Teresa J.A. Quon, Corporation Counsel, Washington, D.C., for Defendant Maddox.

## *MEMORANDUM OPINION*

URBINA, District Judge.

DENYING IN PART AND GRANTING IN PART
DEFENDANT MADDOX'S MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

The *pro se* plaintiff, Emanuel Johnson, Jr., brings this employment discrimination and retaliation action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Mr. Johnson claims that his former employers at the Federal Bureau of Investigation ("the FBI") and the District of Columbia Office of the Inspector General ("the OIG") discriminated against him on the basis of his race and retaliated against him for previous Equal Employment Opportunity

("EEO") activity. The defendants named in the complaint are as follows: (1) defendants John Ashcroft and J.C. Carter, named in their official capacities as U.S. Attorney General and Assistant Director of the FBI's Washington Field Office, respectively (collectively, "the federal defendants"); and (2) defendants Anthony A. Williams, Charles C. Maddox, and Austin Anderson, named in their official capacities as Mayor of the District of Columbia, Inspector General of the District of Columbia, and Deputy Inspector General of the District of Columbia, respectively (collectively, "the D.C. defendants"). On June 21, 2001, the court dismissed the plaintiff's complaint against all but one of the defendants, Charles C. Maddox.

This matter is before the court on defendant Maddox's motion for summary judgment. For the following reasons, the court denies in part and grants in part the defendant's motion.

## II. BACKGROUND

The *pro se* plaintiff details his allegations in a verified, or sworn, complaint. Mr. Johnson, a self-described black/African-American male, worked as a special agent at the FBI between the years 1973 and 1999. Compl. at 5. Mr. Johnson was the named plaintiff in a Title VII class-action lawsuit filed in this court in 1991 by black special agents against the FBI. *Id.* at 5–6; Pl.'s Opp'n Ex. A. That lawsuit settled in 1993. Compl. at 6. In May, 1999, the plaintiff retired from the FBI. Compl. at 5. On May 28, 1999, defendant Maddox hired Mr. Johnson to work at the OIG as an investigator. Def.'s Statement of Undisputed Material Facts ("Def.'s Statement")[1] ¶¶ 28–30. Defendant Maddox

1. The plaintiff has not complied with Local Civil Rule 56.1's requirement that the statement of genuine issues include references to the record. Pl.'s Disputed Facts; *Burke v. Gould,* 286 F.3d 513, 518 (D.C.Cir.2002). To

the extent that the defendant has provided material facts in its statement of material facts, the court admits these facts for the purposes of summary judgment. *Id.;* LCvR 56.1.

knew about the plaintiff's involvement in the class-action lawsuit prior to his decision to hire Mr. Johnson. *Id.*

On June 21, 1999, the plaintiff began working at the OIG. Def.'s Statement ¶ 32. That same day, defendant Maddox met with former defendant Carter. *Id.* ¶¶ 39–40. At that meeting, Mr. Carter told the defendant that the FBI would not support the OIG on matters to which the plaintiff was assigned. *Id.* The plaintiff claims that this meeting resulted in a "hanging threat," over the OIG because the OIG generally needed "significant help" from the FBI, such as arrest authority and access to FBI-owned vehicles. Mot. for Summ. J. at 27 (quoting Ex. D, Johnson Dep., at 318–20).

Two days later, David Bowie, Assistant Inspector General for Investigations at the OIG, reassigned the plaintiff from the OIG Public Corruption Unit to the OIG General Investigations Unit. Def.'s Statement ¶ 41. Mr. Maddox states that "[t]he FBI's decision to not work with [Mr. Johnson] did not cause concern because there was sufficient work within the OIG to carve out a demanding caseload for [Mr. Johnson], as well as maintain the work[ing] relationship between the FBI and OIG on other investigations." Mot. for Summ. J. Ex. H.

The reassignment shifted Mr. Johnson's duties from investigating D.C. Metropolitan Police Department ("MPD") corruption to matters such as documenting absenteeism at D.C. Department of Corrections halfway houses. Compl. at 8; Def.'s Statement ¶ 45. Mr. Johnson believes the reassignment prevented him from maximizing the liaison opportunities he had developed with the MPD through his work at the FBI. Compl. at 9. The reassignment did not result in a diminution of pay or benefits. Mot. for Summ. J. at 20, Exs. J, Y.

On November 29, 1999, Mr. Johnson's first-level supervisor, Gregory Marsilio,

rating Mr. Johnson's performance as "exceptional." Def.'s Statement ¶ 81. Later, on February 7, 2000, defendant Maddox met with Mr. Bowie and Alfred Miller, the OIG's Deputy Assistant Inspector General for Investigations, to discuss Mr. Johnson's performance. *Id.* ¶ ¶ 42, 92. Mr. Miller and Mr. Bowie served as the plaintiff's second and third-level supervisors, respectively. *Id.* ¶¶ 42–43. Defendant Maddox instructed Mr. Bowie to offer the plaintiff a choice of resignation or termination. *Id.* ¶ 97. Defendant Maddox claims he had become convinced that the plaintiff lacked the focus expected of an experienced senior investigator, citing the plaintiff's inability to "salvage" a report regarding halfway houses and his "excessive actions" in serving a subpoena. Mot. for Summ. J. at 25, Ex. H. On or around February 9, 2000, defendant Maddox purportedly asked Mr. Marsilio if he believed that the plaintiff was a "loose cannon." Compl. at 14. According to the plaintiff, Mr. Marsilio responded that Mr. Johnson was one of his "best agents." *Id.* Nonetheless, the OIG sent the plaintiff a termination letter on February 16, 2000, and the discharge was effective March 1, 2000. Def.'s Statement ¶ 100.

The plaintiff filed the instant complaint on November 15, 2000. The plaintiff alleges that the defendants discriminated against him based on his race and retaliated against him due to his prior EEO activity against the FBI. These actions, he contends, led to his retirement from the FBI in 1999 and his reassignment within and subsequent termination from the OIG in 1999 and 2000. Compl. at 3, 5, 9, 14.

On June 21, 2001, the court ruled on the defendants' motions to dismiss, dismissing all of the defendants except for defendant Maddox. Mem. Op. dated June 21, 2001. Subsequently, defendant Maddox filed a motion for summary judgment. In the

summary-judgment motion, Mr. Maddox asserts that the plaintiff (1) failed to state a claim for race discrimination; (2) failed to make a prima-facie case of retaliatory reassignment; and (3) did not establish a prima-facie case of retaliatory termination. For the reasons that follow, the court grants the defendant's motion for summary judgment with regard to the first two arguments, and denies the motion as it pertains to the third argument.

## III. ANALYSIS

### A. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997), *rev'd on other grounds,* 156 F.3d 1284 (D.C.Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993). Lastly, the court should construe a *pro se* plaintiff's filings liberally. *Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir.1999).

### B. The *McDonnell Douglas* Framework

To prevail on a claim of discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

 Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka,* 156 F.3d at 1288; *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff need not, however, establish a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). To establish a prima-facie case of race discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) similarly situated employees not within the same class were not subjected to the same action by the employer. *McDonnell Douglas,* 411 U.S. at 802–805, 93 S.Ct. 1817; *Aka,* 156 F.3d at 1288. To demonstrate a prima-facie case of retaliation, the plaintiff must establish that: (1) she was engaged in a statutorily protected activity; (2) the employer took an adverse

personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *Jones v. Washington Metro. Area Transit Auth.,* 205 F.3d 428, 433 (D.C.Cir.2000); *Forkkio v. Powell,* 306 F.3d 1127, 1131–32 (D.C.Cir. 2002).

The plaintiff has the burden of proving the prima-facie case by a preponderance of the evidence. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* at 253, 101 S.Ct. 1089. By proving a prima-facie case, the plaintiff has established "a legally mandatory, rebuttable presumption." *Id.* at 254 n. 7, 101 S.Ct. 1089. The function of the prima-facie case is to ensure that the plaintiff "establish facts adequate to permit an inference of retaliatory motive." *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *cf. Quaratino v. Tiffany & Co.,* 71 F.3d 58, 65 (2d Cir.1995) (noting that the plaintiff's burden of proof in a pregnancy discrimination action under Title VII was *de minimus* at the prima-facie stage). Accordingly, if at trial, the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *Id.* at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plain-

tiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). The defendant must articulate a clear and reasonably specific factual basis for its subjective reason to be legally sufficient, legitimate, and nondiscriminatory. *Id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove to the fact finder by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'" and that the plaintiff's membership in a protected class was the true reason for the employment action. *Reeves*, 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed earlier. *Reeves*, 530 U.S. at 142–44, 120 S.Ct. 2097; *Aka*, 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable fact finder could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 142–144, 120 S.Ct. 2097 (citing *Burdine*, 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin*, 116 F.3d at 1554.

■ The D.C. Circuit has ruled that simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment. *Aka*, 156 F.3d at 1290–94. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

■ In short, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment). *Id.* at 1289. But the plaintiff need not present evidence "in each of these categories in order to avoid summary judgment." *Id.* Indeed, the D.C. Circuit interprets Supreme Court precedent to mean that, in some cases, a plaintiff who presents a prima facie case that "strongly suggests intentional discrimination may be enough by itself to survive summary judgment." *Id.* n. 4 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

## C. The Plaintiff Fails to State a Claim for Race Discrimination

█ The defendant argues, and the court agrees, that Mr. Johnson has not established a prima-facie case of race discrimination. While the plaintiff provides numerous arguments and facts in support of his retaliation claim, he does not similarly support his race discrimination claim.

Mr. Johnson fails to provide evidence demonstrating that race played a specific role in the defendant's employment decisions regarding Mr. Johnson. *Aka,* 156 F.3d at 1288. In his opposition, the plaintiff states that "[r]ace was the foundation on which the original class-action lawsuit was legally certified . . . [and] from which the resultant retaliatory action was nurtured and allowed to grow into the plaintiff's termination." Pl.'s Opp'n at 8. Also, in his deposition, Mr. Johnson admitted that he had no evidence that anyone at the

OIG intentionally discriminated against him because of his race. Mot. for Summ. J. at 14 (quoting Ex. D). Mr. Johnson's complaint and opposition—which focus on retaliation—suggest that the plaintiff may have conflated race discrimination and retaliation. *See generally* Compl.; Pl.'s Opp'n. This is understandable, especially when the retaliation allegedly took place because of the plaintiff's involvement in a class-action suit charging earlier acts of race discrimination. Although the two claims are intertwined, they are legally distinct. *Compare Aka,* 156 F.3d at 1288 *with Jones,* 205 F.3d at 433; Part III.B, *supra* (listing the elements for a prima facie-case of race discrimination and the elements for a prima facie-case of retaliation).

To present a prima-facie case, the plaintiff must prove that similarly situated employees not within the same class were not subjected to the same action by the employer. *Aka,* 156 F.3d at 1288. More specifically, to prove this third prong of the prima-facie case, the plaintiff must show that "the individuals with whom he seeks to compare his treatment 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Laboy v. O'Neill,* 180 F.Supp.2d 18, 25 (D.D.C.2001), *aff'd,* 2002 WL 1050416 (D.C.Cir. Mar. 13, 2002) (citations omitted). In his opposition, Mr. Johnson argues, without referencing specific portions of the record that support the argument, that the defendant treated him differently from two white employees whom he perceived to be similarly situated. Pl.'s Opp'n at 12–13; *see Laboy,* 180 F.Supp.2d at 25. But Mr. Johnson fails to provide any evidence that non-African American employees who had similar jobs, were subject to

the same standards, worked for the same supervisors, and engaged in similar conduct did *not* suffer similar adverse actions. *Id.; Laboy,* 180 F.Supp.2d at 25. Thus, the court concludes that Mr. Johnson has not established a prima-facie case for race discrimination. *Aka,* 156 F.3d at 1288; *Johnson,* 836 F.Supp. at 18. Because Mr. Johnson has failed to present specific facts that would enable a reasonable jury to find in his favor on this claim, the court grants the defendant's motion for summary judgment on the race discrimination claim. *Greene,* 164 F.3d at 675; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### D. The Plaintiff Fails to Establish a Prima–Facie Case of Retaliatory Reassignment

■ The defendant argues that the plaintiff fails to establish a prima-facie case of retaliatory reassignment because the plaintiff provides no evidence that the transfer to the General Investigations Unit was an adverse action. The court concludes that the reassignment was not an adverse action and therefore grants the motion for summary judgment as it pertains to the transfer.

In *Brown v. Brody,* the D.C. Circuit held that:

> [A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury *unless* there are some *other materially adverse consequences* affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

199 F.3d 446, 457 (D.C.Cir.1999) (emphasis added). The plaintiff bears the burden of showing that the transfer caused materially adverse consequences, which could include a considerable change in benefits, significantly different responsibilities, a lost promotion, or a termination. *Id.* at 452, 456; *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 457 (7th Cir.1994) (explaining that a "bruised ego" is insufficient when contesting a lateral transfer). Minor changes in opportunities or work-related duties do not constitute actionable injuries unless a decrease in salary or work-hour changes accompanies them. *Stewart v. Evans,* 275 F.3d 1126, 1134 (D.C.Cir.2002); *Forkkio,* 306 F.3d at 1130–31.

Other than asserting vaguely that the transfer "deprived [him] of the [ability] to maximize the liaison opportunities he had developed with the MPD," the plaintiff does not specify a harm caused by the transfer. Compl. at 9. Moreover, Mr. Johnson did not receive a diminution in pay or benefits. Mot. for Summ. J. at 20, Exs. X, Y. As the plaintiff has not demonstrated that the reassignment resulted in any "materially adverse consequences," he has not demonstrated that his reassignment was an adverse action. *Brown,* 199 F.3d at 457. Consequently, the plaintiff has failed to establish a prima-facie case of retaliation. *Jones,* 205 F.3d at 433. Thus, the court grants the defendant's motion for summary judgment on the claim of retaliatory reassignment. *Greene,* 164 F.3d at 675.

### E. The Court Denies the Defendant's Motion for Summary Judgment on the Plaintiff's Claim of Retaliatory Termination

Under the three-part *McDonnell Douglas* analysis, the plaintiff survives summary judgment in a Title VII case by establishing a prima-facie case and demonstrating that the defendant's proffered legitimate, non-discriminatory reason is pretextual. *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817. In the instant case, the defendant argues that the court should

grant summary judgment in favor of the defendant on the plaintiff's claim for retaliatory termination. In contrast, the court concludes that the plaintiff has established a prima-facie case of retaliation and has presented facts that cast doubt on the defendant's proffered legitimate, non-discriminatory reason. Accordingly, the court denies the defendant's motion for summary judgment on the claim of retaliatory termination.

### 1. The Plaintiff Establishes a Prima–Facie Case of Retaliatory Termination

■ Mr. Johnson establishes a prima-facie case on his claim of retaliatory termination by showing that (1) he engaged in a protected activity; (2) Mr. Maddox took an adverse personnel action against him; and (3) there is a causal link between the two. *Jones*, 205 F.3d at 433. Mr. Johnson's protected activity was serving as the lead plaintiff in the Title VII class-action suit against the FBI. Pl.'s Opp'n at 11, Ex. A at 2, 7. Under Title VII:

> It [is] an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (cited in *Williams v. Boorstin*, 663 F.2d 109, 115 (D.C.Cir. 1980)). Therefore, by filing an employment discrimination class-action complaint, the plaintiff engaged in a protected activity. *Id.*

Considering the second factor of the prima-facie test, the court finds for the purposes of summary judgment that the defendant offered Mr. Johnson a choice of resignation or termination. Def.'s Statement ¶¶ 96–97; Compl. at 11. The plaintiff refused to resign, and he received an official termination notice on February 16, 2000. Def.'s Statement ¶¶ 99–100; Compl. Ex. 14. These facts present evidence sufficient to show that the defendant took an adverse employment action against Mr. Johnson. *Brown*, 199 F.3d at 455; *Anderson*, 477 U.S. at 252, 255, 106 S.Ct. 2505.

Finally, regarding the third prong, a plaintiff can establish causation by showing that the defendant had knowledge of the protected activity and that the adverse personnel action took place shortly after that activity. *Mitchell*, 759 F.2d at 86. Here, the defendant concedes to awareness of Mr. Johnson's role in the class-action lawsuit. Mot. for Summ. J. Ex. H. Furthermore, the class-action suit was ongoing at the time the defendant terminated Mr. Johnson. Mot. for Summ. J. Ex. E. Between June 1999 and February 2000—when Mr. Johnson worked at the OIG—the class-action plaintiffs made a motion to disburse funds from the monitoring fund, and both sides submitted a joint motion to extend and amend the settlement agreement. *Id.* The presiding judge subsequently approved a Settlement Agreement Amendment on May 17, 2000. *Id.* The defendant terminated the plaintiff, effective March 1, 2000. Def.'s Statement ¶ 100. In other words, the temporal proximity between the protected activity and adverse personnel action supports the necessary element of causation. *Mitchell*, 759 F.2d at 86. In sum, because the evidence supports the existence of all three elements of the prima-facie case, the plaintiff has demonstrated a prima-facie case of retaliation. *Id.*

### 2. Mr. Maddox Provides a Legitimate, Non–Discriminatory Reason for the Plaintiff's Termination

■ Under the second prong of the *McDonnell Douglas* test, the defendant

must show that it possessed a legitimate, non-discriminatory reason for terminating the plaintiff. *Burdine*, 450 U.S. at 254–55, 258, 101 S.Ct. 1089. defendant Maddox argues that he terminated the plaintiff because Mr. Johnson did not perform at the levels expected of an experienced senior investigator. Mot. for Summ. J. at 25. As examples, the defendant points to the plaintiff's "excessive actions" in serving a subpoena and the plaintiff's inability to "salvage" a report on D.C. halfway houses. Def's Statement ¶ 73, 80. As a result, the defendant has proffered a legitimate, non-discriminatory reason for terminating Mr. Johnson. *Burdine*, 450 U.S. at 254–55, 258, 101 S.Ct. 1089.

### 3. The Plaintiff Casts Doubt on the Defendant's Explanation for the Plaintiff's Termination

Under the final prong of the *McDonnell Douglas* analysis, the burden shifts to the plaintiff to rebut the defendant's profered legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff must demonstrate that the defendant's articulated reason is a pretext for discrimination or retaliation. *Id.* Here, Mr. Johnson presents compelling facts that cast doubt upon the defendant's explanation for the plaintiff's termination.

#### a. The June 21, 1999 Meeting Between Mr. Maddox and Mr. Carter

 First, the plaintiff alleges, and the defendant concedes, that on June 21, 1999, the day Mr. Johnson began employment at the OIG, Mr. Carter, of the FBI, met privately with defendant Maddox and told him that the FBI would not provide support to the OIG on any case with which the plaintiff was associated. Compl. at 8; Def.'s Statement ¶ 39–40. In addition, Mr. Carter allegedly stated that he opposed the OIG's decision to hire the plaintiff—a point that the defendant does not concede.

Compl. at 8. While the plaintiff does not cite subsequent statements or actions by Mr. Carter in regard to the plaintiff or the OIG's decision to hire him, the plaintiff claims that the meeting created a "hanging threat" of retaliation against him. Mot. for Summ. J. at 27 (quoting Ex. D).

This June 21, 1999 meeting creates doubt as to the defendant's proffered non-discriminatory, legitimate reason for the plaintiff's termination. Although casting doubt on the defendant's articulated reason alone does not enable the plaintiff to survive summary judgment, the court assesses the meeting in light of the total circumstances of the case. *See Aka*, 156 F.3d at 1291. For example, the defendant concedes that Mr. Carter threatened to withhold FBI resources on matters to which the plaintiff was assigned and admits to transferring Mr. Johnson "in order to maintain the relationship between the FBI and OIG." Def.'s Statement ¶ 39–41. Thus, the court concludes that the meeting creates a genuine issue of material fact as to the defendant's motivation for firing Mr. Johnson. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

#### b. The Plaintiff's Relationship with His Direct Supervisor

 Second, the plaintiff's direct supervisor, Mr. Marsilio, gave him an "exceptional" performance appraisal on December 12, 1999. Compl. at 11, Ex. 4. Mr. Johnson received this evaluation *after* he had submitted a lengthy report about halfway houses. Def.'s Statement ¶¶ 53–54, 80. This is the very same report that the defendant cites as evidence of the plaintiff's poor job performance. *Id.* Furthermore, the plaintiff asserts that on about February 9, 2002 Mr. Marsilio told the defendant that Mr. Johnson was one of his "best agents." Compl. at 14.

The defendant attempts to explain away Mr. Marsilio's evaluation by arguing that he was "left out of the loop and was not aware of [the] plaintiff's deficient performance." Mot. for Summ. J. at 26. Nonetheless, the wide discrepancy in opinion about the plaintiff's job performance evidences a material fact in dispute.

Thus, regarding the termination of the plaintiff's employment at the OIG, the plaintiff has established a prima-facie case of retaliation and has presented facts that cast doubt on the defendant's proffered legitimate, non-discriminatory reason. *McDonnell Douglas*, 411 U.S. at 802–5, 93 S.Ct. 1817. Accordingly, the court denies the defendant's motion for summary judgment with regard to retaliatory termination. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment on the claims of race discrimination and retaliatory reassignment, and denies the defendant's motion for summary judgment on the claim of retaliatory termination. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of November, 2002.

### *ORDER*
#### DENYING IN PART AND GRANTING IN PART THE DEFENDANT MADDOX'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 12th day of November, 2002, it is

**ORDERED** that the defendant's motion for summary judgment on the claim of race discrimination is **GRANTED;** and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment on the claim of retaliatory reassignment is **GRANTED;** and it is

**ORDERED** that the defendant's motion for summary judgment on the claim of retaliatory termination is **DENIED.**

**SO ORDERED.**