Emanuel JOHNSON, Jr., Appellant,

v.

Anthony A. WILLIAMS, Mayor,
et al., Appellees.

No. 03–5221.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 14, 2004.

Emanuel Johnson, Jr., Woodbridge, VA, pro se.

David James Shaffer, Amy Michelle Morton, Garvey, Schubert & Barer, Washington, DC, for Plaintiff–Appellant.

Edward Eugene Schwab, Dep Atty Gen, Mary T. Connelly, Robert James Spagnoletti, Attorney General, Office of Attorney General for the District of Columbia, Washington, DC, for Defendants–Appellees.

Before EDWARDS, SENTELLE, and RANDOLPH, Circuit Judges.

## JUDGMENT

PER CURIAM.

This cause was considered on the record from the United States District Court for the District of Columbia, and was briefed by counsel. It is

ORDERED AND ADJUDGED that, for the reasons indicated herein below, the judgments of the District Court be affirmed.

Appellant Emanuel Johnson brought a Title VII action, *pro se,* against John Ashcroft and J.C. Carter, in their official capacities as U.S. Attorney General and Assistant Director of the Federal Bureau of Investigation's ("FBI") Washington Field Office, respectively (collectively, "the federal appellees"), and Anthony A. Williams, Charles C. Maddox, and Austin Anderson, named in their official capacities as Mayor of the District of Columbia, Inspector General of the District of Columbia, and Deputy Inspector General of the District of Columbia, respectively. Appellant alleged discrimination, retaliation by reassignment, and retaliatory termination.

Appellant began working at the Office of the Inspector General ("OIG") on June 21, 1999. He was reassigned from the OIG Public Corruption Unit to the OIG General Investigations Unit on June 23, 1999. He was sent a termination letter on February 16, 2000, and was formally terminated on March 1, 2000. Appellant formerly had worked for the FBI, and had been the named plaintiff in a race discrimination and retaliation class action lawsuit brought by African American FBI agents. That case ultimately settled. In the present case, appellant alleges that his transfer and his termination at OIG were the result of discrimination and retaliation based on his involvement in the prior lawsuit against the FBI.

It is undisputed that on the day that Johnson began working at OIG, Carter met with Maddox, who had hired appellant to work at OIG, and told him that the FBI would not support the OIG on matters to which appellant was assigned. Two days later, appellant was reassigned from the Public Corruption Unit to the General Investigations Unit. As an investigator in the General Investigations Unit, Johnson received high performance ratings from his first-level supervisor. Maddox, however, became increasingly concerned regarding Johnson's focus, his poor work quality on a particular report, and his "excessive actions" in serving a subpoena. *Johnson v. Maddox,* 230 F.Supp.2d 1 (D.D.C. 2002). OIG terminated Johnson on March 1, 2000.

Johnson filed the complaint in the instant lawsuit on November 15, 2000.

Appellant challenges the District Court's dismissal of the case as to the federal appellees, as well as the District Court's judgments disposing of his claims of race discrimination, retaliatory reassignment, and retaliatory termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000) ("Title VII"). This court already has summarily affirmed the dismissal of the federal appellees, *see* Order of the United States Court of Appeals for the District of Columbia Circuit, *Johnson v. Ashcroft,* No. 03–5221, 2003 WL 22890057 (Nov. 25, 2003), and appellant offers no reason to revisit this earlier judgment.

Appellant also fails to make a colorable claim of race discrimination or retaliatory reassignment under Title VII. Appellant's argument that the District Court erred in granting summary judgment on his discrimination claim, *see* Appellant's Br. 21–27, is without merit. The District Court correctly held that appellant failed to establish a *prima facie* case of race discrimination, because he failed to provide evidence establishing that race played a specific role in the defendant's employment decisions. *Johnson,* No. 00–2743, Mem. Op. at 10–11. The District Court noted that appellant seems to have "conflated race discrimination and retaliation." *Id.* This conflation continues in his brief before this court. Although appellant attempts to demonstrate that Carter was motived by animus and that Carter was the reason he was reassigned and ultimately terminated by OIG, Johnson does not give any indication that Carter's animus was racially motivated rather than retaliatory. The District Court, therefore, was correct to grant summary judgment as to this claim.

■ The District Court was also correct to grant summary judgment as to the retaliatory reassignment claim, because Johnson failed to establish that his reassignment constituted an adverse action. *See id.* at 12–13. In *Brown v. Brody,* 199 F.3d 446 (D.C.Cir.1999), we explained:

[A] plaintiff who is made to undertake ... a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier off act could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncracies of personal preference are not sufficient to state an injury.

*Id.* at 457. Johnson argues that he has demonstrated that his transfer constituted a materially adverse action because the reassignment meant that he could not utilize contacts he had developed with the Metropolitan Police Department. *See* Appellant's Br. 30–31. Johnson claims that in his initial position at the Public Corruption Unit he could have leveraged these Police Department contacts. He seems to argue, moreover, that his inability to use these contacts in the General Investigation Unit affected his ability to succeed in his reassigned position and led to his termination. *Id.*

The only real issue here is whether losing one's potential to leverage contacts constitutes a materially adverse action for purposes of a Title VII retaliatory reassignment claim. Although it is conceivable that losing the potential to use previously developed contacts might in some circumstances constitute an adverse action, appellant has failed to make the case for such a ruling here, because he has not explained

how losing the ability to use those contacts adversely affected him. His suggestion on appeal that his inability to rely on those contacts created the inadequacies that ultimately led to his termination is simply not plausible.

■ Finally, appellant points to no reversible error in the District Court's findings, following a bench trial, that his termination was not retaliatory. Appellant contends that the magistrate judge failed to consider the "entire mosaic" of his career at OIG, the magistrate judge erred in concluding that there was no causal connection between his filed complaints against the FBI and Carter and his termination at OIG, and the magistrate judge incorrectly determined that Johnson failed to establish that Maddox's purported reasons for terminating Johnson were pretextual. *See id.* at 31–36.

Appellant fails to seriously challenge the magistrate judge's finding regarding the absence of a causal link. Similarly, Johnson fails to establish pretext. At most, Johnson demonstrates that there was more than one conclusion that could be drawn from the record on whether he could adequately perform his job. The magistrate judge, however, did not disagree:

> When one looks at the evidence as objectively as possible, all one can say is that there were two schools of thought about Johnson. The first ... believed that he could not do the job. ... [Others], who knew Johnson well, were willing to give him more time to improve his work ..., but refused to guarantee Maddox that this improvement would occur. The evidence, therefore, indicates at most a legitimate dispute among reasonable people as to whether Johnson should stay or go.

*Johnson v. Maddox,* No. 00–2743, Findings of Fact and Conclusions of Law at 10 (D.D.C. July 9, 2003). Thus, Johnson fails to establish clear error in the magistrate judge's findings.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc. See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.