**Laura J. HOPKINS, Plaintiff,**

v.

**WOMEN'S DIVISION, GENERAL BOARD OF GLOBAL MINISTRIES, the United Methodist Church, et al., Defendants.**

**No. CIV.A. 00–1064(RBW).**

United States District Court, District of Columbia.

Sept. 29, 2003.

17. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

John O. Iweanoge, Jr., Esq., Law Office of John O. Iweanoge, Arlington, VA, for the Plaintiff.

Frank C. Morris, Jr., Esq., Brian Steinbach, Esq., Allen Roberts, Esq., Epstein, Becker & Green, P.C., Washington, DC, for the Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon the defendants' motion for summary judgment, following the issuance of the Court's December 12, 2002, Memorandum Opinion dismissing all of the plaintiff's claims,[1] except for her race discrimination claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 238 F.Supp.2d 174 (D.D.C.2002) (Walton, J.). The plaintiff, a Native American of the Cahuilla and Tohono O'Odham tribes, was employed by defendant Women's Division, General Board of Global Ministries, The United Methodist Church ("Women's Division"), Defendants' Motion for Summary Judgment ("Defs.' Mot."), Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' Stm. of Mat. Facts") ¶¶ 13, 15, and has asserted claims for disparate treatment for alleged dis-

---

1. These claims in the plaintiff's complaint included: all claims against defendant United Methodist Women, United Methodist Church in Counts I, II and III; all of the national origin, sex, and age discrimination, retaliation and hostile environment claims under Title VII in Counts I, II and III; all claims under 42 U.S.C. § 1981a and all of the religious, national origin, sex and age discrimination, retaliation and hostile environment claims under 42 U.S.C. § 1981 in Count IV; all claims in Count V (discrimination under 42 U.S.C. § 1983); all claims in Count VI (wrongful discharge); all claims in Count VII (intentional or negligent infliction of emotional distress); all claims in Count VIII (negligent hiring, supervision, and retention); and all claims in Count IX (defamation).

criminatory actions that occurred during the course of her employment and for discrimination on the basis of her race with respect to her termination. *See* Amended Complaint and Prayer for Jury Trial ("Am. Compl.") ¶¶ 27–29, 36–38. These claims have been brought against both the United Methodist Church's General Board of Global Ministries' Women's Division and the United Methodist Church's General Board of Global Ministries. Upon consideration of the parties' submissions and for the reasons set forth below, the Court will grant summary judgment to the defendants on these remaining claims.

## I. *Factual Background*

A general factual background regarding all of the plaintiff's claims in her complaint and a brief description of the United Methodist Church and its affiliates is contained in the Court's December 12, 2002, Memorandum Opinion. *See Hopkins*, 238 F.Supp.2d at 175–77. However, the Court finds it appropriate to set forth the plaintiff's specific claims with respect to both her disparate treatment claims for adverse actions that occurred during the course of her employment and with respect to the termination of her employment.

### (A) *Plaintiff's Disparate Treatment Claims During the Course of Her Employment*

### (1) *Denial of Requests for Equipment*

The basis for the plaintiff's disparate treatment claim with respect to the alleged denials of her requests for equipment is that she purportedly "repeatedly made requests to her supervisor for necessary office equipment to carry out her job function tasks, and that while her supervisor promptly addressed such requests from her executive peers, she would not address [p]laintiff's requests." Defs.' Stm. of Mat. Facts ¶ 26 (citing Am. Compl. ¶ 15). Specifically, the plaintiff "alleges that she was not given a video TV monitor or a laptop computer[.]" *Id.* ¶ 28 (citing Defs.' Mot., Ex. B (Plaintiff's Deposition on December 19, 2000) pp. 261:22–262:5, 262:11–14, 263:19–22). However, upon a review of the plaintiff's deposition, it appears that the request for the video TV monitor was for the entire office, which apparently was denied, and the request for the laptop computer was granted, as the plaintiff stated that a laptop computer was designated for the use by the entire office.[2] *Id.* ¶ 29 (citing Defs.' Mot., Ex. B pp. 262:11–265:19). Therefore, while the plaintiff alleges in her Statement of Material Disputed Facts ("Pl.'s Stm. of Mat. Facts") that her "supervisor ignored her requests for supplies (whereas such requests by [her] non-Indian co-workers were immediately approved)," Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n") at 8, this statement is contradicted by her deposition testimony. The plaintiff's testimony acknowledges that her request for a video TV monitor was for the office's use and that nobody in the office was given a video TV monitor. In addition, she also states that the entire office was given a laptop computer to use.[3] Moreover, the plaintiff has failed to provide any evidence of other requests that were granted by her supervisor to her former non-Indian co-workers.

---

**2.** It is not clear from the record whether the laptop had been requested for just the plaintiff's use or for the use of the entire office.

**3.** The Court notes that when asked if any other employees in her office had a laptop computer, the plaintiff indicated that another employee did in fact have a laptop, but that "[i]t was supposed to be for the office, but she wound up keeping it." Defs.' Mot., Ex. B at p. 264:3–10. However, the plaintiff acknowledged that the laptop was not assigned personally to this employee and the employee let her use the laptop. *Id.* at p. 264:11–22.

### (2) *Requests to Have Support Staff Disciplined*

The basis for the plaintiff's disparate treatment claim with respect to alleged requests she made to have a support staff disciplined is that she purportedly "repeatedly made requests to her supervisor to have support staff disciplined for poor job performance, and that while her supervisor promptly addressed such requests from her executive peers, she would not address [p]laintiff's requests." Defs.' Stm. of Mat. Facts ¶ 31 (citing Am. Compl. ¶ 15). However, it appears from the plaintiff's deposition that the support staff member who was performing poorly, Brendell Smith, was also supervised by two other individuals, and one of these individuals also complained about Ms. Smith. *Id.* ¶¶ 33, 35 (citing Defs.' Mot., Ex. B pp. 276:4–8, 274:6–275:4, 411:1–3.). The defendants note that "[w]hile [p]laintiff asserts that certain of her executive peers were able to have their concerns about support staff addressed, she was unable to name any of these support staff employees, to identify to whom her peers allegedly complained, or to state that she had personal knowledge of what, if any action was taken against these unnamed employees." *Id.* ¶ 38. Thus, once again, plaintiff's claim is not only contradicted by her deposition testimony, but she fails to provide any evidence that shows that non-Indian employees received preferential treatment.

### (3) *Complaints about Abusive Work Environment*

The basis for the plaintiff's disparate treatment claim with respect to the purported abusive work environment she was subjected to, included her allegations that the same staff person, Ms. Smith, would "not cooperate with tasks that were delegated to her . . . [,]" that she received "unsolicited sexually-oriented mail . . . [,]" that her office was vandalized, *id.* ¶¶ 44 (citing Defs.' Mot., Ex. B pp. 441:7–442:16.), 49 (citing Defs.' Mot., Ex. B p. 290:9–19.), and "work relating to Native American issues was not even distributed[,]" *id.* ¶ 49 (citing Defs.' Mot., Ex. B p. 290:9–19.). Purportedly, on approximately three separate occasions between the Fall of 1998 and the Spring of 1999, the plaintiff received "sexually oriented mail" at her work site. *Id.* ¶ 45. On April 27, 1999, the plaintiff sent a memorandum to her supervisor indicating the receipt of this material, but concluding that she believed it was "a waste of time to ponder the possibilities and . . . that the matter should be dropped, but she would advise [her supervisor] if it should happen again." *Id.* (citing Defs. Mot., Ex. B–41 (Memorandum from plaintiff to Lois Dauway dated April 27, 1999)).

Sometime during the evening of April 12–13, 1999, the plaintiff's desk was vandalized, causing "damage to her desk drawer, but she did not know if any papers were taken." *Id.* ¶ 46 (citing Defs. Mot., Ex. B pp. 442:14–444:3.). The defendants have submitted as evidence an April 15, 2003, memorandum from the plaintiff to the Controller of the Women's Division discussing the vandalism, which indicates that others in the office "said they noticed some items in their work areas being moved as well[,]" Def.'s Mot., Ex. C–1 (Memorandum from plaintiff to Connie Takamine dated April 15, 1999), and an April 16, 2003, memorandum from the Women's Division to an employee of the building maintenance department advising the employee about somebody tampering with the plaintiff's desk drawer and complaining that "the 'night' clean up crew . . ." had left the conference room door unlocked on several occasions, Def.'s Mot., Ex. C–2 (Memorandum from Women's Division to Building Maintenance dated April 16, 1999). The April 16 memorandum also requested a meeting to "discuss our con-

cerns and possible repairs to [the plaintiff's] desk." *Id.*

Finally, with respect to plaintiff's allegation that work relating to Native American issues was not evenly distributed, the plaintiff admitted in her deposition that other staff members worked on Native American issues and that she specifically requested to do work on such issues and attend Native American events. Defs.' Stm. of Mat. Facts ¶¶ 49–51 (citing Def.'s Mot., Ex. B pp. 290:9–19, 290:20–22, 341:14–342:14, 379:19–21, 291:3–293:16; Ex. B–28 (Memorandum from plaintiff to Lois Dauway dated June 12, 19970; Ex. B–29 (Memorandum from plaintiff to Lois Dauway dated February 10, 1998))).

**(B)** *Plaintiff's Disparate Treatment Claim Regarding Her Termination*

On Wednesday, June 9, 1999, the plaintiff contacted her supervisor's assistant because the plaintiff needed to inform her supervisor that she could not attend two meetings: the June 14–15, 1999, National Seminar Planning Committee meeting and the June 18–22, 1999, Midwest Regional School meeting. *Id.* ¶ 70 (citing Defs.' Mot., Ex. B pp. 112:20–114:5.). The "National Seminar Planning Committee is a group of staff that plans the different parts of the National Seminar[,]" which is an event that is held every four years that "provides United Methodist Women from diverse backgrounds and age groups the opportunity to meet on common ground to explore God's requirement in [their] lives." *Id.* ¶¶ 57–59 (citations omitted). The "[p]laintiff was a part of this planning committee [and was] responsible for heading a group planning issue group discussions to occur on August 15 and 16, 1999." *Id.* ¶ 60 (citations omitted). According to the defendants, "[a]ttendance at the meeting was essential" because this was the final meeting before the National Seminar and "this

was where all the final program plans were being brought together and all the staff of the sections to which [the plaintiff] belonged were expected to be present and to report their progress." *Id.* ¶¶ 61–62 (citations omitted). The second meeting, the Midwest Regional School meeting is, according to the defendants, "an important annual event." *Id.* ¶ 65 (citing Defs.' Mot., Ex. B p. 106:12–17.). The

Regional Schools are an annual delegated leadership event sponsored by the Women's Division . . . . Each school is planned primarily for the elected leaders of the five (5) jurisdictions and conference organizations of United Methodist Women and for those with teaching responsibility in Conference Schools of Christian Mission. Each school is planned by elected representatives of United Methodist Women.

The purpose of Schools of Christian Mission and mission education events is to provide opportunities for persons to grow in understanding of the mission of the Church in the current world context. They give particular attention to the responsibility of women in fulfillment of this mission; strengthen the leadership and membership of United Methodist Women and initiate opportunities for spiritual and educational experiences, especially in preparation for leadership roles in the organization, the Church and the world. Every activity at Regional School should contribute to education for mission.

*Id.* (citation omitted). The defendants state that all staff were expected to be present at the Regional School to which they were assigned, *id.* ¶ 66 (citation omitted), and the plaintiff "was responsible for leading six hours of Officer Updates over two days[,]" *id.* ¶ 68 (Defs.' Mot., Ex. B pp. 106:22–107:8.).

Because the plaintiff's supervisor was out-of-town when the plaintiff contacted the assistant, the assistant forwarded the plaintiff's phone call to the Assistant General Secretary for Administration of the Women's Division (the "AGSA"). *Id.* ¶¶ 72–74 (citations omitted). The plaintiff told the AGSA that she could not travel for personal reasons. *Id.* ¶ 77; Defs.' Mot., Ex. B at 117:16–118:19. While the plaintiff states in her affidavit and statement of material facts in dispute that she "sought and obtained the permission of the [AGSA] not to attend the meeting of Jun[e] 14–15, 1999[,]" Pl.'s Stm. of Mat. Facts ¶ 9; Pl.'s Opp'n, Ex. B ¶ 6, this is flatly contradicted by her previously provided deposition testimony in which she admits that the AGSA "never gave [her] permission not to attend the two meetings[,]" Defs.' Mot., Ex. B at 121:7–12. In *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114 (D.C.Cir.1991), the District of Columbia Circuit stated that

> [w]here a party emphatically and wittingly swears to a fact, it bears a heavy burden— even in the summary judgment context— when it seeks to jettison its sworn statement. Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony.

*Id.* at 1123 (citations omitted). Accordingly, because the plaintiff has failed to "offer persuasive reasons for believing the supposed correction[,]" *id.* (citation omitted), the Court must credit the plaintiff's deposition testimony in which she acknowledged that she was never given permission not to attend the meetings.

The plaintiff's supervisor "first learned that [the plaintiff] was not attending the meetings after hours on Friday, June 11, 1999." Defs.' Stm. of Mat. Facts ¶ 81 (citation omitted). On Monday morning, June 14, 1999, the plaintiff's supervisor left a message for the plaintiff to call her. *Id.* ¶ 82. When the plaintiff returned her telephone call that afternoon around 4:30 p.m., the only reason the plaintiff offered for not attending was that it was "personal." *Id.* ¶¶ 83–85 (citations omitted). The plaintiff's supervisor informed the plaintiff that "this was not a good enough reason and that not going to the meetings was grounds for dismissal." *Id.* ¶ 86 (citations omitted). The plaintiff's supervisor gave her the option of resigning or being terminated. *Id.* ¶ 87.. However, before terminating the plaintiff, her supervisor agreed to look at a memorandum drafted by the plaintiff, which discussed issues the plaintiff had with Ms. Smith, complaints of being overworked, and the plaintiff's explanation that she could not attend the meetings because of work responsibilities and concerns about the support staff. *Id.* ¶¶ 88, 93. On June 15, 1999, the plaintiff's employment was terminated. *Id.* ¶ 98.

## II. *Standard of Review: Rule 56*

Summary judgment is generally appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at issue to determine whether a fact is "material", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And a "genuine issue" of fact is "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Sanders v. Veneman*, 211 F.Supp.2d 10, 14 (D.D.C.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

While it is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," *Greene v. Amritsar Auto Servs. Co.,* 206 F.Supp.2d 4, 7 (D.D.C.2002) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505), the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position[,]" *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a summary judgment motion, the moving party must demonstrate that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Thus, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## III. *Legal Analysis*

Claims under Title VII and section 1981 which are pursued in the absence of direct evidence of discrimination are analyzed under the familiar burden-shifting test articulated in the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Morgan v. Fed. Home Loan Mortgage Corp.,* 328 F.3d 647, 650 (D.C.Cir.2003) (citing *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1232 (D.C.Cir.1984)) (applying the *McDonnell Douglas* framework to § 1981

claims). This is such a case. To establish a prima facie case without direct evidence of discrimination, a plaintiff must demonstrate "that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002) (quoting *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999)). If the plaintiff is able to establish her prima facie case by a preponderance of the evidence, the burden of production switches to the employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 144 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). If the employer is able to satisfy this burden of production, "it [effectively] rebuts the plaintiff's prima facie case, and the presumption of discrimination created by the prima facie case 'drops out of the picture.'" *Teneyck v. Omni Shoreham Hotel,* 254 F.Supp.2d 17, 20–21 n. 3 (D.D.C.2003) (Walton, J.) (quoting *Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 762 (D.C.Cir.2002) (citation omitted)). "The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory." *Stella,* 284 F.3d at 144 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). In *Aka v. Washington Hospital Center,* 156 F.3d 1284 (D.C.Cir.1998) (en banc), the District of Columbia Circuit examined the Supreme Court's decision in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), "in some detail, as [it represented at that time] the [Supreme] Court's most recent explication of the workings of the *McDonnell Douglas* framework." *Aka,* 156 F.3d at 1289. The *Aka* Court noted that once

the plaintiff establishes her prima facie case and

> the employer has met its burden of producing a nondiscriminatory reasons for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment). That is not to say that every plaintiff must always present evidence in each of these categories in order to avoid summary judgment.

*Id.* In assessing whether the plaintiff has met her "burden of showing that a reasonable jury could conclude that [she] had suffered discrimination and accordingly summary judgment is inappropriate[,]" a court "must consider all the evidence in its full context[.]" *Id.* at 1290. The *Aka* Court concluded that "[a]lthough we find that rebuttal evidence alone will not always suffice to permit an inference of discrimination, we do not endorse a reading of *Hicks* under which employment discrimination plaintiffs are presumptively required to submit evidence over and above such a rebuttal in order to avoid summary judgment." *Id.* at 1292. In reaching this conclusion, the Circuit Court rejected a position taken by the First Circuit in *Hidalgo v. Overseas Condado Insurance*

*Agencies, Inc.,* 120 F.3d 328 (1st Cir.1997), stating:

> that the *Hidalgo* court believed that employment-discrimination plaintiffs must as a routine matter do more than discredit the employer's explanation in order to avoid summary judgment. That assumption we think would be inconsistent with *Hicks,* which makes clear that 'no additional proof of discrimination is required' as a matter of course once a plaintiff has shown that a jury could reject the employer's proffered explanation.

156 F.3d at 1292 (quoting *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742) (citations omitted).

**(A)** *Can the Plaintiff Establish a Claim of Disparate Treatment During the Course of Her Employment?*

The crux of the plaintiff's disparate treatment claim for alleged discriminatory actions that occurred during the course of her employment is that her

> supervisor ignored her requests for supplies (whereas such requests by [her] non-Indian co-workers were immediately approved), repair and investigation into the damaging of her office desk (such repair requests by non-Indian coworkers was immediately addressed), and no immediate investigation or disciplinary action taken regarding the extracurricular activities (while at work) and or misuse of office equipment by an office subordinate (such request and investigations by non-Indian executive staff had led to the immediate discipline and/or termination of the employee).

Pl.'s Opp'n at 8.[4] The defendants assert that the "[p]laintiff attempts to avoid the

---

4. The Court notes that the plaintiff's Statement of Material Disputed Facts is contained within the text of the plaintiff's opposition. In their Reply, the defendants state that the plaintiff's Statement of Material Disputed Facts violates this Court's Local Rule 7.1(h) because not only is it incorporated into her opposition but "she has done so in such a way

weakness of her case by contradicting her own prior testimony; making other assertions of fact that are contradicted by the documentary record; and presenting various hearsay or otherwise unsupported allegations concerning the treatment afforded other employees." Reply at 2.

In support of their position, the defendants rely on two lines of case authority. First, those cases that stand for the proposition that a party may not rely solely on mere conclusory allegations to defeat a summary judgment motion, *see Greene*, 164 F.3d at 675; *Harding*, 9 F.3d at 154, and second, cases that hold that "a party may not create a material issue of fact simply by contradicting [her] prior sworn testimony[,]" *Pyramid Sec.*, 924 F.2d at 1123 (citations omitted) ((explaining that "[t]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard [the later testimony].'") (citation omitted) (bracketed language in the original)). The defendants assert that these are the things the plaintiff has done in opposing their summary judgment motion. The Court agrees.

As this Court has set forth above, the plaintiff's disparate treatment claim with respect to the alleged denials of her requests for equipment is contradicted by her deposition testimony, which acknowledges that her office eventually received the laptop computer[5] and that nobody in the office had a video TV monitor. Fur-thermore, her disparate treatment claim with respect to the purported abusive work environment she was allegedly subjected to, including her allegations that the support staff member she complained about would not cooperate with tasks that were delegated to her, her receipt of the sexually-oriented mail, the vandalism of her office, and her representation that work relating to Native American issues was not evenly distributed, was also contradicted by her deposition testimony, as well as documentary evidence in the record. Finally, each of the plaintiff's claims that non-Indian co-workers were somehow treated differently with respect to these allegations is wholly unsupported by any evidence in the record.

In addition to these deficiencies, the defendants' assert that the only allegation raised by the plaintiff in her opposition to their motion for summary judgment as grounds for her position that she "was subjected to harsher terms and condition of employment due to race" are her claims concerning the denial of equipment and her requests to have the support staff member disciplined. This Court's Local Rule 7.1(b) states:

> Within 11 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. *If such*

---

as to make it extremely difficult, if not impossible, to determine which, if any, of Defendant's [Statement of Material Facts as to Which There is No Genuine Issue] are disputed. Thus, Defendant's [Statement of Material Facts as to Which There is No Genuine Issue] should be accepted as true." Reply Memorandum in Support of Defendants' Motion for Summary Judgment ("Reply") at 3. The defendants also note that

> some of the allegedly disputed facts set forth in [p]laintiff's [Statement of Material Disputed Facts] are actually undisputed.

Others are unsupported by the portions of the record cited in support. Finally, many of the allegedly disputed facts purportedly supported by Plaintiff's accompanying Affidavit ... contradict either her earlier deposition testimony or undisputed documentary evidence and therefore should not be considered.

*Id.*

5. The plaintiff's complaint about not timely receiving the laptop will be addressed later in this Opinion, *infra* at p. 25.

a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

Rules of the United States District Court for the District of Columbia, LCvR 7.1(b) (emphasis added). It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded. *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C.Cir.1997); *Stephenson v. Cox*, 223 F.Supp.2d 119, 121 (D.D.C. 2002). The District of Columbia Circuit has stated that "the discretion to enforce . . . [R]ule [7.1(b)] lies wholly with the district court", *Bender*, 127 F.3d at 67–68 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C.Cir. 1997)), and noted that it "ha[s] yet to find that a district court's enforcement of this rule constituted an abuse of discretion", *id.* (citations omitted). Accordingly, because the plaintiff had the opportunity to respond to all of the challenges to the claims in her complaint, the Court will construe her failure to refute the defendants' assertion that she is unable to establish a prima facie case of disparate treatment with respect to the purported abusive work environment she was subjected to, including her allegations that the support staff member would not cooperate with tasks that were delegated to her, her receipt of sexually-oriented mail, the vandalism to her office, and work relating to Native American issues not being even distributed to her former co-workers, as conceded.

### (1) Can the Plaintiff Establish a Prima Facie Case of Discrimination Regarding Her Remaining Claims?

Turning to the plaintiff's remaining claims that she was the subject of disparate treatment during the course of her employment, the Court finds that the defendants are also entitled to summary judgment on these claims. As already stated above, to establish a prima facie case of disparate treatment, a plaintiff must establish "that '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.' " [6] *Stella*, 284 F.3d at 145 (citation omitted).

### (a) Do the Plaintiff's Claims Rise to the Level of Adverse Employment Actions?

The defendants assert that the plaintiff's claims relating to the denial of equipment and the defendants' failure to address her requests to have a support staff member disciplined do not rise to the level of adverse employment actions, and thus she is unable to satisfy the second prong of a prima facie case of disparate treatment as articulated in *Stella. Id.* The plaintiff alleges "that 'it is safe to infer that the requested supplies and equipment, which were delayed for a long period of time, were necessary for performing [p]laintiff's job, and the long delay had an adverse consequence on her employment.' " [7] Pl.'s Opp'n at 14. However, as

---

**6.** The "[d]efendants assume, for the purposes of argument, that [p]laintiff can establish that she is a member of a protected group (Native Americans)." Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at 24.

**7.** Notably, the defendants also asserted in their summary judgment motion that "[g]iven

the date that [p]laintiff made these requests [*i.e.*, early 1997], any claim that failure to grant them was discriminatory is also barred by both the 300 day filing period applicable to Title VII claims, 42 U.S.C. § 2000e–5(e), and the three-year filing period applicable to Section 1981 claims." Defs.' Mem. at 26 n. 6 (citing *Banks v. Chesapeake and Potomac Tel.*

the defendants aptly point out, other than making this conclusory assertion, the plaintiff has offered no evidence that would establish that this purported delay in providing the requested supplies had an adverse effect on the plaintiff's employment. Reply at 13 (citing *Johnson v. Maddox,* 230 F.Supp.2d 1, 9 (D.D.C.2002) (Urbina, J.) (citing *Brown,* 199 F.3d at 457)). Similarly, with respect to the plaintiff's allegation that the defendants' failure to address the problems she was having with a member of the support staff amounted to disparate treatment, the defendants submit that the plaintiff has not offered any evidence that this claim rises to the level of an adverse employment action. The plaintiff's rebuff simply is that the defendants'

> argument is utterly without merit because a reasonable jury can infer that [d]efendants['] failure to discipline Ms. Smith is an adverse employment action. It is undisputed that [p]laintiff's employment contemplated two support staff, which was necessary to facilitate a smooth running of the office. However, Ms. Smith who was one of the support staff was very uncooperative with duties assigned to her and this without question made [p]laintiff's job more difficult, which in turn changed the terms, and conditions of her employment, as [p]laintiff understood them when she agreed to occupy the position.

Pl.'s Opp'n at 14. Once again the plaintiff has offered no evidence regarding how the defendants' alleged failure to discipline Ms. Smith amounted to an adverse employment action. *See Weigert v. Georgetown Univ.,* 120 F.Supp.2d 1, 18–19 (D.D.C.2000) (Urbina, J.) (finding that plaintiff's claim of adverse employment ac-

tion resulting from the defendant's failure to provide adequate secretarial support was flawed because the plaintiff did not offer evidence "to establish that such an action rises to the level of a 'material adverse action.' "). In *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court explained that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257. While the plaintiff may have desired to have a laptop computer to assist her in performing her job and have Ms. Smith disciplined, in the absence of any evidence regarding how these two claims rose to the level of an adverse employment action, they do not constitute actionable claims. This is because "minor or trivial actions[,]" *Weigert,* 120 F.Supp.2d at 17, or "idiosyncrasies of personal preference are not sufficient to state an injury[,]" *Brown,* 199 F.3d at 457 (citing *DiIenno v. Goodwill Indus.,* 162 F.3d 235, 236 (3d Cir.1998)); *Doe v. Dekalb County Sch. Dist.,* 145 F.3d 1441, 1448 (11th Cir.1998) (finding "no case, in [the 11th] or any other circuit, in which a court explicitly relied on the subjective preferences of a plaintiff to hold that plaintiff had suffered an adverse employment action"); *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996) (noting that "not everything that makes an employee unhappy is an actionable adverse action"). Thus, the Court concludes that the plaintiff's claims relating to the denial of equipment and her requests to have a

---

Co., 802 F.2d 1416, 1418–23 (D.C.Cir.1986)). The defendants point out in their Reply that the plaintiff failed to respond to this claim. Accordingly, if for no other reason, this claim would have to be dismissed because the Court

concludes that the plaintiff has conceded that she failed to exhaust her administrative remedies. *See* Rules of the United States District Court for the District of Columbia, LCvR 7.1(b).

support staff member disciplined do not rise to the level of adverse employment actions.

### (b) *Has the Plaintiff Offered Evidence to Establish that the Defendants' Actions Give Rise to an Inference of Discrimination?*

■ The defendants also assert that the plaintiff has failed to offer any admissible evidence showing either that "other employees who made similar requests for supplies or equipment ... [had their requests] granted immediately" or that other employees' requests to have staff members disciplined had their requests treated differently. Reply at 13–16. The third prong of a disparate treatment prima facie case of discrimination requires that a plaintiff establish that "the unfavorable action gives rise to an inference of discrimination." *Stella*, 284 F.3d at 145. A plaintiff will satisfy this burden if she is able to produce direct evidence, *see, e.g., Dunaway*, 310 F.3d at 765–66 (the plaintiff presented evidence of her immediate supervisor's derogatory statements about her gender and national origin, made in connection with the termination of her employment), or circumstantial evidence, *see, e.g., Johnson*, 230 F.Supp.2d at 8 (a plaintiff must show that "the individuals with whom he seeks to compare his treatment have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (citation omitted). In this case, the plaintiff has failed to offer any direct or circumstantial evidence that would permit an inference of discrimination. The

plaintiff's Affidavit simply states that her supervisor "repeatedly ignored my requests for supplies necessary for my work, whereas such requests by my non-Indian co-workers were immediately approved." Pl.'s Opp'n, Ex. B (Plaintiff's Affidavit) ¶ 17; *see also* Pl.'s Stm. of Mat. Facts ¶ 18. The defendants point out that the plaintiff "fails to proffer any evidence identifying other employees whose requests were granted immediately, much less the nature of the requests, to whom they were made, or when they were made and granted." Reply at 13. Clearly, in the absence of any direct evidence of discrimination, the plaintiff's conclusory statement does not satisfy the need to provide specificity and to proffer admissible evidence that would create an inference of discrimination.

■ The plaintiff's failure to discipline claim is lacking for the same reason. The plaintiff does state that she

> was advised by Glory Dharmaraj, Ann Craig, Joyce Hamlin, and Dana Jones during the protracted period when I was having problems with my support staff, Ms. Smith, that [the plaintiff's supervisor] and other administrative staff promptly reprimanded or terminated a subordinate employee, whenever they complained about performance or problems.

Pl.'s Opp'n, Ex. B ¶ 10. However, as the defendants note, she "fails to identify to whom these individuals complained, the support staff involved, the nature of the complaints, or what, if any, action was taken against these unnamed employees." Reply at 15 (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 995–96 (D.C.Cir.2002)).[8] In *Waterhouse*, the

---

**8.** While the defendants cite *Waterhouse* in their discussion regarding the plaintiff's failure to establish a prima facie case, the district court in *Waterhouse* "assume[d] that a prima facie case [was] established and proceed[ed] to analyze whether plaintiff ha[d] demonstrated that defendants' proffered reason [was] a pretext for discrimination." 298 F.3d at 993

plaintiff "attempt[ed] to undermine the defendants' explanation for her termination [by] identif[ying] six 'black managers' who she alleged were not terminated despite performance problems." *Id.* at 995 (citation omitted). The Circuit Court concluded that the plaintiff's "Verified Statement 'provide[d] no evidence that these individuals ... had individual performance problems [or] had performance problems similar to hers.' " *Id.* (citing *Waterhouse*, 124 F.Supp.2d at 14). The Circuit Court concluded that "[i]n the absence of evidence that the comparators were actually similarly situated to her, this allegation added nothing to [plaintiff's] claim that the defendants' explanation for her termination was mere pretext." *Id.* at 995–96 (citations omitted). Such is the case here, where the plaintiff simply lists several individuals who allegedly told the plaintiff that when they complained about a problem with "a subordinate employee ...[,]" management "promptly reprimanded or terminated" those employees. Pl.'s Opp'n, Ex. B ¶ 10. As in *Waterhouse*, without further evidence that the "comparators were actually similarly situated to her," 298 F.3d at 995–96, the plaintiff's claim must fail. Moreover, these inadmissible hearsay statements could not be used by the plaintiff to establish that she was the victim of disparate treatment discrimination.

Therefore, because the plaintiff is unable to establish that her claims rise to the level of adverse employment actions and that the "unfavorable action gives rise to an inference of discrimination[,]" *Stella*, 284 F.3d at 145, the Court will grant the defendants' summary judgment on the plaintiff's remaining disparate treatment claim for alleged adverse employment actions that occurred during the course of her employment.

**(B) *The Plaintiff's Disparate Treatment Claim Regarding Her Termination***

**(1) *Can the Plaintiff Establish a Prima Facie Case of Discrimination Regarding her Termination?***

■ The plaintiff alleges that she was terminated by the defendants because of her race. For purposes of the plaintiff's disparate treatment claim regarding her termination, the defendants assume in their summary judgment motion that the plaintiff is able to establish the first two prongs of her prima facie case, *i.e.*, that the plaintiff is a member of a protected group (Native American) and that her termination constituted an adverse employment action. Defs.' Mem. at 33. However, the defendants assert that the plaintiff's claim is flawed because, once again,

> there is no evidence that others similarly situated were treated differently. To the contrary, there is no evidence that *anyone* ever engaged in any conduct remotely similar to [p]laintiff's unilateral decisions not to attend regional meetings, much less that such an employee was not thereafter terminated for his or her actions.

*Id.* at 33–34 (emphasis in the original). In response, the plaintiff has proffered evidence that

> [s]everal Executive staff member[s] have been absent from several meeting[s] including the one that the [p]lain-

(citing *Waterhouse v. District of Columbia*, 124 F.Supp.2d 1, 7 (D.D.C.2000)). The district court in *Waterhouse* proceeded in this fashion, however, because the central issue before the court, *i.e.*, whether the plaintiff performed at an acceptable level, was the only disputed issue regarding both the plaintiff's prima facie case and her pretext claim. *Id.* In this case, the Court finds the Circuit Court's analysis applicable because of its discussion of the specificity requirements of a disparate treatment claim.

tiff was unable to attend but they were not terminated, including but not limited to Claretta Nesbitt (January 15, 1997[ ) ]; Conseulo Urquiza (June 1997, Jan. 1998, Nov. 1998, January 1999, March 1999); Anna Rhee, Jennifer Washington (April 1998); Joyce Hamlin (March 1999); Mia Adjali (May 1999); Betty Edwards (Nov.1998); Diana Rodriguez (Jan. Feb. 1999). Any important reason for a person's absence is written beside the person's name.

Pl.'s Stm. of Mat. Disp. Facts ¶ 6 (citing Pl.'s Opp'n, Ex. C (minutes from different meetings)).

As this Court has stated above, to satisfy the third prong of the prima facie case for disparate treatment, a plaintiff must establish that "the unfavorable action gives rise to an inference of discrimination." *Brown*, 199 F.3d at 452 (citations omitted). To accomplish this requirement with the use of circumstantial evidence, a "plaintiff must prove that similarly situated employees not within the same class were not subjected to the same action by the employer." *Johnson*, 230 F.Supp.2d at 8 (citing *Aka*, 156 F.3d at 1288). The plaintiff has produced the minutes from a March 1, 1999, National Seminar Staff Team meeting at which three individuals were absent (Joyce Hamlin, Betty Edwards, Yvette Moore), a February 6–7, 1999, National Seminar Planning Committee meeting at which four individuals were absent (Lois Dauway, Chris Keels, Cheryl Hemmerle, Diana Rodriguez), a January 14, 1999, National Seminar Staff Planning Committee meeting at which four individuals were absent (Lois Dauway, Kolya Braun–Greiner, Diana Rodriguez, Consuelo Urquiza), a November 2, 1998, National Seminar Staff Planning Committee meeting at which two individuals were absent (Betty Edwards, Consuelo Urquiza (Jury Duty)), a May 12, 1999, Executive Staff Meeting of the Section of Christian Social Responsibility at which one person was absent (Mia Adjali), a March 4, 1999, Executive Staff Meeting of the Section of Christian Social Responsibility at which two individuals were absent (Joyce Hamlin, Consuelo Urquiza), a January 15, 1997, Executive Staff Meeting of the Section of Christian Social Responsibility at which one person was absent (Claretta Nesbitt), a June 4, 1997, Executive Staff Meeting of the Section of Christian Social Responsibility at which one person was absent (Consuelo Urquiza), a January 14, 1998, Executive Staff Meeting of the Section of Christian Social Responsibility at which one person was absent (Consuelo Urquiza), a December 11, 1996, Executive Staff Meeting of the Section of Christian Social Responsibility at which two individuals were absent (Kolya Bruan (sick), Anna Rhee (maternity leave)), and a November 6, 1996, Executive Staff Meeting of the Section of Christian Social Responsibility at which one person was absent (Anna Rhee (maternity leave)). Pl.'s Opp'n, Ex. C. In their Reply, the defendants respond to this evidence in a footnote stating that the plaintiff "proffers no evidence showing that the circumstances of these individuals' absences were remotely similar to [p]laintiff's unilateral decision not to attend meetings without any justification or permission. Indeed, ·in some circumstances the minutes themselves reflect legitimate reasons for the absences." Reply at 18 n. 7.

It is apparent from the minutes of several National Seminar Staff Team meetings and Executive Staff Meetings of the Section of Christian Social Responsibility that several members of these staff groups were absent, one member as many as five times and six others who were each absent on two occasions. Pl.'s Opp'n, Ex. C. Although the defendants accurately indicate that in some circumstances the minutes reflect legitimate reasons for the staff

members absence, out of the twenty-two absences recorded, only four such reasons were noted. *Id.* However, while the plaintiff purports that she has presented evidence of similarly situated employees, *i.e.,* fellow staff members of the National Seminar Staff Team and the Executive Staff of the Section of Christian Social Responsibility who were not terminated following their absences from these meetings, the plaintiff has failed to produce any evidence regarding whether or not these similarly situated absent employees were within her same class. The only evidence in the record of the race of the absent staff members who were not terminated was the race of one individual, Lois Dauway, who is African–American, *see* Pl.'s Stm. of Mat. Disp. Facts ¶ 3; Pl.'s Opp'n, Ex. B ¶ 2, and was the plaintiff's supervisor. Ms. Dauway also concurred in the decision to terminate the plaintiff's employment. Clearly this is not sufficient to satisfy the plaintiff's burden of establishing that "similarly situated employees not within the same class were not subjected to the same action by the employer." *Johnson,* 230 F.Supp.2d at 8 (citing *Aka,* 156 F.3d at 1288). While Ms. Dauway may be a fellow staff member of both the National Seminar Staff Team and the Executive Staff of the Section of Christian Social Responsibility, as the plaintiff's supervisor and the source of all of the plaintiff's disparate treatment claims, who was one of the individuals responsible for the termination of the plaintiff's employment, she is not similarly situated with the plaintiff. Furthermore, with the record in its current posture, the Court is unable to assess the race of the remaining staff members. They may or may not all be Native Americans, but the plaintiff's failure to dispel this potential has created this uncertainty. Moreover, as to the absence of those indi-

viduals for which no explanation for their absences is provided in the minutes, the Court is again left without any proof that the reasons for their failures to attend the meetings were of the same nature as the plaintiff's explanation. Or rather, whether they were for other clearly legitimate and excusable reasons. It is the plaintiff's burden to establish her prima facie claim of discrimination, *see Stella,* 284 F.3d at 144–45, and in the absence of proof that would permit an "inference of discrimination[,]" *id.* at 145, the Court must grant the defendants summary judgment on plaintiff's claim that her termination amounted to disparate treatment discrimination.

## IV. *Conclusion*

For the aforementioned reasons, the Court will grant the defendants' summary judgment motion. This result is called for because the plaintiff has failed to establish prima facie claims of disparate treatment discrimination with respect to both her claim for alleged adverse employment actions that occurred during the course of her employment and the claim regarding the termination of her employment.[9]

## *ORDER*

Upon consideration of the defendants' summary judgment motion, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the defendants' motion for summary judgment is **GRANTED**. It is

**FURTHER ORDERED** that this case shall be **DISMISSED WITH PREJUDICE.**

---

9. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.